UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MATTHEW WEISS,

                            Plaintiff,

              -v-

YOTTA TECHNOLOGIES, INC.,

                            Defendant.

22-CV-8569 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

      Plaintiff Matthew S. Weiss brought this action against Yotta Technologies, Inc. ("Yotta"), claiming that he was a victim of identity theft and that Yotta failed to promptly credit his account when notified of allegedly unauthorized transfers of funds from his account with Yotta. Weiss's counsel, faced with mounting evidence that Weiss's claims were fabricated, moved to withdraw as counsel and agreed to dismiss the complaint without prejudice. Yotta moved for sanctions under Rule 11 of the Federal Rules of Civil Procedure. This Court declined to award sanctions under Rule 11, finding that Weiss and his lawyer had complied with Rule 11's safe-harbor provision. *See Weiss v. Yotta Techs.*, No. 22-CV-8569, 2024 WL 4285849, *3-4 (S.D.N.Y. Sept. 25, 2024) ("*Weiss I*"). However, the Court directed Weiss to show cause why he should not be sanctioned pursuant to the Court's inherent authority. *Id.* at *4-5.

      Because the Court finds that Plaintiff Matthew Weiss fabricated the claims in this case, committed fraud on the Court, and engaged in vexatious, bad-faith, and oppressive litigation, the Court awards sanctions against him pursuant to the Court's inherent authority.

1

**I.      Background**

On October 7, 2022, Weiss, through his attorney, Raymond Nardo, filed the complaint in this case. (ECF No. 1 ("Compl.").) The complaint alleged the following:

- In February 2022, Weiss opened an account with Yotta, which is a startup financial saving platform that allows users to deposit funds and win prizes in the form of a lottery. (Compl. ¶¶ 12-15.)

- On six specific dates in July 2022, there were eleven fund transfers from Weiss's Yotta account, totaling $42,290, which Weiss did not authorize and from which he did not benefit. (Compl. ¶¶ 16-19.)

- Weiss informed Yotta of the allegedly unauthorized transfers within sixty days. (Compl. ¶¶ 17, 20.)

- Yotta did not investigate Weiss's claims or issue a provisional credit for the allegedly unauthorized transfers. (Compl. ¶¶ 29-30.)

The complaint asserted claims against Yotta under the federal Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693 *et seq.*, and New York state law. (Compl. ¶¶ 32-55.)

On July 3, 2023, Yotta filed an answer denying the allegations of the complaint, asserting counterclaims for harassment and defamation, and requesting attorney's fees and costs for the filing of a frivolous and fraudulent lawsuit. (ECF No. 35.) The answer and counterclaims described third-party discovery indicating that Weiss in fact had authorized the eleven fund transfers himself. (*Id.* at 14.) It also noted that Weiss, represented by Nardo, had filed at least eleven "copy-cat" lawsuits in the United States District Court for the Eastern District of New York ("EDNY") against various banks and other parties containing similar allegations of identity

theft. (*Id.* at 17-18.) And it described a pattern of harassing, threatening, and offensive behavior by Weiss in his interactions with Yotta personnel. (*Id*. at 13-15.)

On August 23, 2023, Weiss filed a motion to dismiss Yotta's counterclaims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 45.)

On September 14, 2023, Raymond Nardo, counsel for Weiss, filed a letter motion requesting "that the matter be stayed immediately so that I can file a letter motion, under seal, to withdraw from this matter." (ECF No. 50.)

On September 18, 2023, Yotta served Weiss's counsel with a letter pursuant to Rule 11(c)(2). (ECF No. 65-9 ("Rule 11 Letter").) The Rule 11 Letter (1) described third-party discovery showing that Weiss himself had initiated the disputed transfers, thus disproving his claims, (2) discussed Weiss's litigation history, including his filing of fifty cases in Florida state court and eleven in the EDNY, and (3) enclosed a Florida arrest warrant for Weiss for falsely reporting a crime. (*Id.* at 4-9.) The Rule 11 Letter demanded that Weiss immediately dismiss his claims with prejudice and remit Yotta's legal fees, and threatened to seek sanctions against Weiss, Nardo, and Nardo's firm. (*Id*. at 9.)

Also on September 18, 2023, Nardo filed a motion to withdraw as counsel for Weiss, together with a declaration noting "irreconcilable differences" with his client. (ECF Nos. 54, 55.) Yotta requested an opportunity to oppose the withdrawal motion and stated that it intended to pursue Rule 11 sanctions against Weiss and Nardo. (ECF No. 56.)

On October 4, 2023, the Court held a telephone conference with counsel for the parties. (*See* ECF No. 62 ("Conf. Tr.").) Nardo, then still counsel for Weiss, stated that he had offered to Yotta to dismiss the case *without* prejudice and indicated that he was still willing to do so. (*Id.* at 6:4-6:13, 7:11-7:14.) Nardo did not believe he had the authority to dismiss his client's claims

3

*with* prejudice. (*Id*. at 6:8-6:13.) The Court inquired with Yotta's counsel whether Yotta would consent to a dismissal of all claims without prejudice, clarifying that the Court could retain jurisdiction to decide Yotta's anticipated sanctions motion. (*Id.* at 6:25-7:8, 15:2-15:14.) On October 25, 2023, Yotta stated in a letter that the parties had agreed to dismissal of all claims "without prejudice as previously indicated at the October 4, 2023 conference." (ECF No. 60.) On October 29, 2023, the Court issued an order (1) dismissing all claims and counterclaims in the case without prejudice, on consent of the parties, (2) "retain[ing] jurisdiction to resolve any motion for attorney's fees and/or other sanctions," and (3) setting a briefing schedule on Yotta's proposed motion for Rule 11 sanctions. (ECF No. 61.)

Following briefing on Yotta's motion for sanctions, the Court held an in-person hearing on May 16, 2024. (*See* ECF No. 81 ("Tr.").) Present at the hearing were Weiss, Weiss's counsel (Raymond Nardo), Yotta's counsel, and representatives from Yotta including its CEO.

On September 25, 2024, this Court issued an opinion and order on Yotta's motion for Rule 11 sanctions. *See Weiss I*, 2024 WL 4285849. Finding that Weiss and his counsel had complied with Rule 11's safe-harbor provision, the Court denied Yotta's motion for sanctions under Rule 11. *Id*. at *3-4. However, the Court also found that sanctions against Weiss might be warranted pursuant to the Court's inherent authority. Specifically, the Court found:

> The evidence presented by Yotta, and reviewed at length during the May 16, 2024 hearing, appears to present a substantial basis for a potential finding that Matthew Weiss engaged in bad-faith, vexatious, and/or oppressive litigation conduct by fabricating the claims in this case—specifically, that he falsely and intentionally claimed that the eleven fund transfers from his Yotta account in July 2022 were unauthorized and were not made by him. There is thus "arguably a strong basis for this Court" to impose sanctions on Weiss for engaging in bad-faith litigation conduct. *See Keitel v. D'Agostino*, No. 21-CV-8537, 2022 WL 17251372, at *2 (S.D.N.Y. Nov. 28, 2022).

4

*Id.* at *5. Accordingly, the Court ordered Weiss "to show cause in writing, no later than November 1, 2024, why sanctions should not be imposed pursuant to the Court's inherent authority." *Id*. The Court also permitted Yotta to file any response submission by November 15, 2024. *Id*.

Weiss, now proceeding *pro se*, filed a response to the order to show cause, which was dated October 31, 2024, and received by the Court on November 6, 2024. (ECF No. 88.) Yotta filed a reply on November 22, 2024. (ECF No. 91.)

**II.    Discussion**

As the Court explained in *Weiss I*, the denial of Yotta's motion for sanctions under Rule 11 based on Nardo's compliance with its safe-harbor provision does not preclude an award of sanctions under the Court's inherent authority. *See Weiss I*, 2024 WL 4285849, at *4-5. This Court has "the inherent power to impose sanctions for the bad-faith conduct" of litigants—and Rule 11 does not displace that power. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).

**A.    Legal Principles Governing Inherent Authority Sanctions**

"The Supreme Court has made clear that a district court has inherent authority to sanction parties appearing before it for acting in bad faith, vexatiously, wantonly, or for oppressive reasons." *Sassower v. Field*, 973 F.2d 75, 80-81 (2d Cir. 1992). Such sanctions must be imposed "with restraint and discretion." *Schlaifer Nance & Co., Inc. v. Est. of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999). "[I]nherent-power sanctions are appropriate only if there is clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009). "A federal court may 'exercise its inherent power to sanction a party or an attorney who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 141 (2d Cir. 2023) (quoting *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013)).

5

Rule 11's safe-harbor provision does not override a district court's inherent authority to impose sanctions for bad-faith litigation conduct. *See Weiss I*, 2024 WL 4285849, at *4 n.2 (citing cases). That is because sanctions based on the Court's inherent authority operate differently from Rule 11 sanctions. "[W]hereas each of the other mechanisms [such as Rule 11 and 28 U.S.C. § 1927] reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses." *Chambers*, 501 U.S. at 46. That form of sanction power works "to fill in the interstices" left by existing rules and statutes. *Id.* For example, "the amendment to § 1927 allowing an assessment of fees against an attorney says nothing about a court's power to assess fees against a *party*." *Id.* at 48 (emphasis added). Thus, inherent-authority sanctions are both broader and narrower than Rule 11 sanctions—covering a broader range of conduct but requiring a finding of bad faith. *See, e.g., Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153, 158 n.2 (2d Cir. 2010) (vacating Rule 11 sanctions based on the safe-harbor provision, but holding that "the court's inherent authority" might "permit sanctions to be imposed for *any* conduct" and observing that its bad-faith requirement is higher than Rule 11's allowance for "sanctions to be imposed for filings that simply lack a reasonable basis in law or fact." (emphasis added)). Underlying the Second Circuit's approach is the recognition that sanctions imposed pursuant to the court's inherent authority may be levied only upon a finding of bad faith, obviating the requirement for a safe harbor that protects attorneys and parties from much more innocent conduct that may be sanctionable under Rule 11. Other Circuits are in accord with that approach. *See, e.g., Goodvine v. Carr*, 761 F. App'x 598, 601-02 (7th Cir. 2019) (affirming a district court's sanction, based arguably on its inherent authority and despite substantial compliance with Rule 11's safe-harbor provision, because Rule 11 "does not principally target manufactured evidence or lies under oath," which is "litigation misconduct of a different

degree"); *Elliot v. Tilton*, 64 F.3d 213, 216-17 (5th Cir. 1995) (reversing an imposition of Rule 11 sanctions because of the safe-harbor provision but remanding the case for consideration of inherent-authority sanctions under the bad-faith standard).

The subject of potential sanctions pursuant to the court's inherent authority "must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on the matter, and must be forewarned of the authority under which sanctions are being considered, and given a chance to defend himself against specific charges." *Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir. 1997) (cleaned up); *see also Schlaifer*, 194 F.3d at 334 (extending the *Sakon* requirements for sanctioning an attorney to sanctioning a party). Finally, even where some sanction is warranted, courts are to consider sanctions less severe than outright dismissal, such as the award of attorney's fees. *See Shepherd v. Annucci*, 921 F.3d 89, 97-98 (2d Cir. 2019).

### B. Application to the Conduct of Matthew Weiss

The evidence establishes overwhelmingly that Weiss fabricated the claims in this case, that he lied to the Defendant and to the Court about the facts relating to those claims, and that he has likely engaged in a pattern of fraudulent and abusive litigation conduct in connection with multiples disputes and in multiple courts.

#### 1. Evidence of the Disputed Transactions

First, the evidence shows that, contrary to the complaint's allegations, Weiss himself authorized the eleven transactions from his Yotta account in July 2022. The third-party discovery obtained by Yotta shows that all eleven of the allegedly "unauthorized" transfers sent funds to CashApp or ApplePay accounts belonging to Matthew Weiss—accounts bearing his name, phone number, email address, and street address. (*See* ECF No. 65-3 at 10-11, 19.) While Weiss himself asserted at the hearing that he has "been a victim of identity theft" for over a

decade (Tr. at 41:19-41:20), his story is utterly implausible. Indeed, it is contradicted by his own written communications with Yotta during the time period at issue. Weiss's former counsel represented to the Court: "[M]y client told me that he never had a CashApp account and never had an Apple Pay account." (*Id.* at 39:24-39:25.) Weiss's statement to his lawyer was a lie. In Weiss's communications with Yotta in July 2022 he acknowledged having ApplePay and CashApp accounts. (ECF 65-4 at 7.) And he admitted at the hearing that he had an ApplePay account in July 2022. (Tr. at 50:18-50:24.) In fact, during the course of his lengthy and often abusive email communications with Yotta personnel about various disputes from May to July of 2022, he wrote on July 12, 2022, "I'll just move the $10,000 out myself using apple pay or zelle later this week." (ECF 65-4 at 8.) A few days later, $10,000 was transferred from Weiss's Yotta account to his ApplePay account—the same account he told his lawyer did not exist. (ECF No. 65-3 at 19.) And that $10,000 payment, plainly initiated by Weiss in the form of a $7500 transfer and a $2500 transfer to his own ApplePay account on July 17, 2022, was among the allegedly "unauthorized" transactions alleged in the complaint. (Compl. ¶ 17.) The evidence shows that Weiss fabricated the claims in this case.[1]

### 2.   Weiss's Arrest Record

The complaint alleges that Weiss "has no history of making false or unverifiable fraud reports" and "has no criminal history." (Compl. ¶ 36.) In fact, Weiss appears to have been

---

[1] Weiss does not offer any reasonable basis for disputing this assessment of the evidence. Of course, he could have produced his bank records and iPhone ApplePay history, as the Court invited him to do (Tr. at 63:15-64:2), but he has declined to do so. He continues to assert that he has been the victim of "identity theft," but that does not plausibly explain the evidence in the record. Weiss's former counsel also pointed to anomalies in some of the ApplePay records produced by Yotta, suggesting that certain transfers via ApplePay were reversed within minutes. (ECF No. 68 at 7-8.) But regardless of the explanation for these transactions, this raises a question about less than half of the total amount of transfers at issue, and none of the CashApp transfers.

arrested and charged at least twice for fabricating evidence, false report of a crime, and perjury. An Orange County, Florida arrest warrant affidavit from August 2022 stated that Weiss had reported to police a series of harassing and violent text messages, claiming they had come from a woman Weiss had worked with. (ECF No. 65-5 at 2-3.) After tracing the source of the text messages by IP address, the police determined that Weiss had sent himself the text messages. (*Id.* at 10.) The affidavit also noted that in July 2022 Weiss had been charged in Osceola, Florida with making a false report to law enforcement when he "attempted to report a robbery but it was later determined that Matthew paid $1000 to be tied up, have dirty socks taped in this mouth and be verbal[ly] degraded." (*Id*. at 8.)

### 3. Other Litigation Conduct

Weiss has filed dozens of lawsuits in New York and Florida, typically relating to alleged identity theft. He has filed at least eleven lawsuits similar to this one in the EDNY since 2020. (*See* ECF No. 65-1 at 13.) He has filed at least ten such lawsuits in the Middle District of Florida. Nearly all of these lawsuits have been voluntarily dismissed within a few months.[2] He has also filed over seventy-five cases in small claims court in Orange County, Florida, in the past three years—cases against banks, credit agencies, financial companies, technology companies, law firms, and individuals, sometimes filing duplicate claims in two different counties against the same person. (*See* Rule 11 Letter at 6-8.)

---

[2] Only one of the EDNY cases proceeded beyond a quick settlement or withdrawal. In that case, *Weiss v. Bethpage Federal Credit Union*, No. 22-CV-1808, 2024 WL 3432030 (E.D.N.Y. July 16, 2024), Weiss claimed that someone else had fraudulently obtained a loan in his name using his personal information—even though the evidence showed (1) that the loan application was initiated and electronically signed through Weiss's IP address, and (2) that the proceeds of the loan were transferred to Weiss's personal bank account. Judge Orelia Merchant dismissed the case on summary judgment, concluding that there was "no admissible evidence beyond [Weiss's] own testimony to support [the] speculative contention" that some unknown third party had obtained the loan using Weiss's information. *Id*. at *7.

In addition, Weiss has repeatedly engaged in threatening and offensive conduct with opposing parties and lawyers in connection with his legal disputes. In his interactions with Yotta personnel in this case, he threatened that "street Justice involving serious fireworks will be used as everyones [*sic*] addresses get posted in certain radical groups." (ECF No. 65-4 at 5.) He wrote, "All of you can get covid, then stabbed with an aids needle from a junkie, then shot in the face infront [*sic*] of your children." (*Id*. at 6.) He obtained the cell number of Yotta's CEO and texted him, "Hey Asswipe" and "Fuk U." (*Id*. at 4.) And he added the Yotta CEO's email to a Reddit account under the moniker "suckabigfatblackdik."[3] (*Id*.)

Weiss's disturbing behavior in this case is typical of his conduct in litigation. In his litigation in Florida, he has made threats of physical violence and sexual assault and used racist epithets against his opponents and their families. *See, e.g.,* ECF No. 18 at 2-12, *Weiss v. Trans Union LLC*, No. 6:23-CV-608 (M.D. Fla.). In April 2022, Weiss was banned from future filings with the American Arbitration Association (AAA) because his "interactions with opposing counsel have repeatedly violated the [AAA] Standards of Conduct." *Id*. at 14 (quoting an order from the AAA).

Finally, Weiss appears to have created fraudulent documents—communications purporting to be authored by his litigation opponents, including fabricated settlement offers—on multiple occasions. *See id*. at 3; ECF No. 65-6 at 24-25, 33; ECF No. 91-4.

---

[3] Interestingly, Weiss has never denied that he—as opposed to the unknown person who supposedly has been impersonating him online—authored these communications. In fact, in a telling admission, his former counsel stated at the hearing that "as far as the harassing messages, I had a conversation with my client about that because people did bring that to my attention. After the conversation with my client there were no further harassing messages for the duration of the case." (Tr. at 60:2-60:6.)

    **4.    Appropriate Sanctions**

For the reasons discussed above, the Court finds that Weiss fabricated the claims in this case, committed fraud on the Court, and has engaged in vexatious, bad-faith, and oppressive litigation in this Court and in other courts. Weiss's claims in this and other cases have been baseless and "motivated by improper purposes," *Wolters Kluwer Fin. Servs., Inc.*, 564 F.3d at 114, including the purpose of obtaining nuisance-value settlements through fabricated claims and abusive litigation tactics.

The Court's inherent power to impose sanctions includes the power to impose, in its discretion, "attorney's fees representing the entire cost of the litigation." *Chambers*, 501 U.S. at 45. Here, in light of "the severity of [Weiss's] abuses of the judicial system," *id.* at 56, and the fact that the claims in this case were fabricated, an award of the full amount of Yotta's attorney's fees and costs is warranted. The Court has carefully reviewed the invoices submitted by Yotta's counsel and finds the fees and costs incurred to be entirely reasonable. (*See* ECF Nos. 84, 86, 87.)[4] Through December 2023, Yotta incurred $37,365.50 in attorney's fees and costs on this matter. (ECF No. 73 at 12.) From January 2024 through September 2024, Yotta incurred an additional $16,000.17. (*See* ECF No. 87.) The Court therefore awards a total of $53,365.67 in sanctions.

In addition, Weiss will be required to file or submit a copy of this Opinion and Order to the court in any pending and future lawsuits in which he is a party and in which there are allegations of identity theft or unauthorized transactions. *Cf. Usherson v. Bandshell Artist*

---

[4] Yotta has provided redacted copies of its law firm's monthly invoices to Weiss. (ECF Nos. 84, 85.) Because the unredacted copies of the invoices contain attorney work product and privileged communications, Yotta's letter motion to seal portions of its invoices (ECF No. 86) is granted. *See CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, No. 13-CV-2581, 2021 WL 4135007, at *4 (S.D.N.Y. Sept. 10, 2021) (Cott, Mag. J.).

*Mgmt.*, No. 19-CV-6368, 2020 WL 3483661, at *21 (S.D.N.Y. June 26, 2020) (requiring sanctioned attorney to file a copy of opinion and order in all pending cases and cases filed for one year).

**III.   Conclusion**

For the foregoing reasons, pursuant to this Court's order to show cause dated September 25, 2025 (ECF No. 82), Matthew S. Weiss is hereby SANCTIONED as follows:

1. It is hereby ORDERED that Matthew S. Weiss shall pay $53,365.67 in sanctions to Yotta Technologies, Inc., through Yotta's counsel, within 30 days of the date of this Opinion and Order; and

2. It is hereby ORDERED that Matthew S. Weiss shall file a copy of this Opinion and Order to the court in any pending and future lawsuits in which he is a party and in which there are allegations of identity theft or unauthorized transactions.

The Clerk of Court is directed to terminate the motion at ECF No. 86.

The Clerk of Court is also directed to mail a copy of this order to the *pro se* Plaintiff at the following two addresses:

Matthew Weiss
11 Gregory Drive
Ronkonkoma, NY 11779

Matthew Weiss
3240 Solstice Dr
Apt. 114
Kissimmee, FL 34746

SO ORDERED.

Dated: April 22, 2025
       New York, New York

_____
J. PAUL OETKEN
United States District Judge